**Slip Op. 04-40**

**United States Court of International Trade**

ALUMINERIE BECANCOUR, INC.,
c/o REYNOLDS METALS COMPANY,

                    Plaintiff,

          v.                          Before: Pogue, Judge

UNITED STATES,                        Court No. 00-00445

                    Defendant.

[Defendant's motion to dismiss granted; action dismissed.]

                              Decided: April 23, 2004

LeBoeuf, Lamb, Greene & MacRae, LLP (Gary P. Connelly, Melvin S. Schwechter) for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Acting Attorney-in-Charge, International Trade Field Office, James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Yelena Slepak, Attorney, Of Counsel, Office of Assistant Chief Counsel, U.S. Bureau of Customs and Border Protection, for Defendant.

**OPINION**

**Pogue, Judge:** Plaintiff Aluminerie Becancour, Inc. ("Aluminerie" or "Plaintiff") seeks to invoke this Court's jurisdiction pursuant to either subsections (a) or (i) of 28 U.S.C. § 1581 (2000) to challenge the denial of its administrative protest

filed pursuant to 19 U.S.C. § 1514 (2000).[1]  Defendant United States Bureau of Customs and Border Protection[2] ("Customs" or "Defendant") moves for dismissal claiming lack of subject matter jurisdiction because Plaintiff failed to properly and timely file its protest and failed to follow court rules in filing this case.

In the event that the Court finds jurisdiction lacking, Plaintiff requests transfer of its suit to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1631,[3] asserting that the United States Court of Federal Claims has concurrent jurisdiction under 28 U.S.C. § 1491.[4]

For the reasons stated below, Defendant's motion to dismiss is

---

[1]Because Plaintiff filed its summons in 2000, Summons of Aluminerie at 2, the Court will refer to the 2000 versions of the statutes or regulations.  The Court acknowledges, however, that because the events related to this action took place over an extended period of time, various versions of each of the statutes and regulations involved may apply.  Accordingly, the Court has reviewed the versions from 1994 until the present and found that no amendments affecting the outcome of this case have occurred. The Court notes that subsection (c) of 28 U.S.C. § 1491, see infra note 27, was redesignated from subsection (b) to subsection (c) in 1996.  See Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (codified as amended at 28 U.S.C. § 1491 (2000)).

[2]Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection.  See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

[3]For the pertinent text of the statute, see infra note 23.

[4]For the pertinent text of the statute, see infra note 24.

granted.

## I. Background

Plaintiff's administrative protest has a ten-year history, a review of which is necessary background for the motion at issue here. On December 15, 1992, Aluminerie made a voluntary disclosure to Customs under 19 U.S.C. § 1592(c)(4), admitting that it had failed to pay certain Merchandise Processing Fees ("MPF") on unwrought aluminum products imported into the United States between 1990 and the date of disclosure. Def.'s Mem. Supp. Mot. Dismiss at 1-2 ("Def.'s Mot."); Pl.'s Opp'n to Mot. Dismiss at 1 ("Pl.'s Opp'n"). To perfect its voluntary disclosure, Customs requested that Aluminerie tender $88,542.87, which Aluminerie paid on October 6, 1994. See Letter from John Barry Donohue, Jr., Assoc. Gen. Counsel, Reynolds Metals Co., to William D. Dietzel, Dist. Dir., U.S. Bureau of Customs & Border Prot., Pl.'s Ex. A at 1,[5] 4 (Oct. 6, 1994) ("October 6 Letter").[6]

---

[5]Documents appended to Pl.'s Opp'n are referred to as "Pl.'s Exhibit" followed by the corresponding letter. The document appended to Plaintiff's motion for leave to amend its memorandum of opposition is referred to as "Pl.'s Attachment."

[6]The record shows that all correspondence and documentation referred to in this decision was either addressed to or sent by Reynolds Metals Company, in its capacity as owner of Aluminerie Becancour, Inc. Reynolds Metals Company also owns Canadian Reynolds Metals Company, which is the Plaintiff in a companion case before this Court. Canadian Reynolds Metals Co. v. United States, Court No. 00-00444, slip op. _____ (CIT Apr. 23, 2004) (pending).

Along with its payment, Aluminerie submitted a letter in which it advised Customs of its intent to appeal the MPF determination, as it considered its entries exempt from the MPF rate demanded by Customs. Id. at 1. Aluminerie argued that the unwrought aluminum products were of Canadian origin, and thus qualified for special treatment pursuant to the United States-Canada Free Trade Agreement ("USCFTA"). Letter from Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, to Dist. Dir., U.S. Bureau of Customs & Border Prot., Pl.'s Ex. D at 4, 4-5 (Feb. 1, 1995) ("February 1 Letter").[7] Customs, on the other hand, had previously concluded that due to a non-Canadian additive, Aluminerie's entries failed to qualify for the reduced MPF rate provided by the USCFTA. Id. at 5. Aluminerie, in turn, argued that pursuant to the doctrine of de minimis non curat lex, the foreign additive in the Canadian entries should be disregarded for country of origin purposes. Id. Aluminerie informed Customs in its payment tender letter that it expected a full refund of the tender amount along with accrued interest in the event that subsequent litigation was successful. October 6 Letter, Pl.'s Ex. A at 1.

Customs responded in a letter dated November 8, 1994, stating that it had received Aluminerie's tender of MPF, but rejected all conditions imposed by Aluminerie in connection to this payment.

---

[7]Barnes, Richardson & Colburn was Plaintiff's legal representative at the time. See February 1 Letter, Pl.'s Ex. D at 4.

Letter from Charles J. Reed, Fines, Penalties & Forfeitures Officer, on behalf of William D. Dietzel, Dist. Dir., U.S. Bureau of Customs & Border Prot., to John Barry Donohue, Reynolds Metals Co., Pl.'s Ex. B at 1 (Nov. 8, 1994) ("November 8 Letter"). Subsequently, Customs and Aluminerie concluded an escrow agreement on December 20, 1994, in which they agreed to let the decision in a designated test case[8] control whether a full refund of Aluminerie's MPF payment was appropriate. Agreement between Reynolds Metals Company and U.S. Customs Service, Pl.'s Mot. for Leave to Amend Pl.'s Opp'n, Pl.'s Attach. at 1 (Dec. 20, 1994) ("Escrow Agreement").[9] In the event that the test case decision was favorable to Aluminerie, Customs further agreed to refund the full tendered amount "together with such interest as may be required by law." Id. at 1-2.

On February 6, 1995, Aluminerie filed an administrative protest. See Letter from Frederic D. Van Arnam, Jr., Barnes,

_____

[8]In subsequent amendments to the escrow agreement, concluded on October 28, 1996, and July 13, 1998, the parties identified the designated test case as Alcan Aluminum Corp. v. United States, 21 CIT 1238, 986 F. Supp. 1436 (1997), originally referred to as St. Albans Protest No. 0201-93-100281 (HQ 955367) and subsequently appealed to the Federal Circuit Court of Appeals. Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 3, 4 (Oct. 30, 1996); Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 5, 6 (July 13, 1998); Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999).

[9]Reynolds Metals Company concluded the agreement with Customs on behalf of Plaintiff. See Escrow Agreement, Pl.'s Attach. at 1.

Richardson & Colburn, to Dist. Dir., U.S. Bureau of Customs & Border Prot., Pl.'s Ex. D at 1 (Feb. 6, 1995) ("February 6 Letter"); Protest No. 0712-95-100130, Pl.'s Ex. D at 3 (Feb. 6, 1995) ("Protest Form").[10]  In its protest, Plaintiff appeared to make three objections to Customs' actions.  First, Plaintiff stated that it objected to the assessment and payment of MPF.  February 1 Letter, Pl.'s Ex. D at 4.  Second, it protested "contingencies not anticipated in the [escrow] [a]greement[,] or unanticipated frustration" of the same.  Id. at 5-6.  Plaintiff then appears to have made a third objection, referring to Customs' acceptance of payment.  Id. at 4.  In support of this third objection, Plaintiff noted that a copy of Customs' letter dated November 8, 1994, as

---

[10]The "protest package" provided as Exhibit D by Plaintiff contains copies of two letters along with a copy of a completed Customs Form 19 (Protest No. 0712-95-100130); the first letter is dated February 1, 1995, and the second letter is dated February 6, 1995.  See Pl.'s Ex. D.  Accordingly, it appears as though Plaintiff first attempted to forward a protest to Customs on February 1, 1995, but that for reasons unclear to the Court, the protest was not filed until February 6, 1995, the date Customs received and stamped the protest form.  Protest Form, Pl.'s Ex. D at 3.  The implementing regulation for filing of protests confirms that a protest is considered filed on the date it is received by Customs.  19 C.F.R. § 174.12(f) ("The date on which a protest is received by the Customs officer with whom it is required to be filed shall be deemed the date on which it is filed.").  Additionally, both parties agree that the protest was filed on February 6, 1995.  See Def.'s Mot. at 2; Pl.'s Opp'n at 3.  As the February 6 Letter merely serves as a complement to the original protest attempt on February 1, 1995, however, the Court will treat the letter dated February 1, 1995, as part of the protest filed on February 6, 1995.  See February 6 Letter, Pl.'s Ex. D at 1 ("[W]e forwarded protests, dated February 1, 1995, in which [Aluminerie] protested the assessment and payment of Merchandise Processing Fee ('MPF').").

well as a receipt of payment made out by Customs on November 7, 1994, was enclosed with the protest. Id.; see also Collection Receipt from U.S. Bureau of Customs & Border Prot., to Aluminerie Becancour, Pl.'s Ex. A at 6 (Nov. 7, 1994) ("Receipt"). Plaintiff clarified in its protest that it did not expect Customs to act in response to its objections until final judgment was rendered in the pending test case. February 1 Letter, Pl.'s Ex. D at 6.

On January 5, 1999, the Federal Circuit Court of Appeals issued its decision in the test case, Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999). The Alcan Aluminum Corp. Court held that the foreign additive in question was subject to the principle of de minimis non curat lex, and therefore, the entries were considered of Canadian origin. 165 F.3d at 902. The Alcan Aluminum Corp. decision became final on April 5, 1999. Pl.'s Opp'n at 4.

Because Aluminerie's entries qualified for preferential trade status under the USCFTA as a result of the favorable decision in Alcan Aluminum Corp., Customs refunded to Aluminerie the deposited MPF amount in full "[o]n or about" February 7, 2000.[11] Compl. of Aluminerie at 3.

Customs, however, failed to tender interest pursuant to the escrow agreement when it made the refund to Aluminerie. Def.'s Mot. at 2; Pl.'s Opp'n at 4. Aluminerie claims it then sent, on

---

[11]No supporting exhibit was provided, but Defendant does not deny this statement. See Def.'s Mem. at 2.

February 10, 2000, a request for accelerated disposition of its protest.[12] Pl.'s Opp'n at 4. Following what Aluminerie considered a denial of the original protest by operation of law, it filed a summons with the Court on September 7, 2000. Summons of Aluminerie at 2. Plaintiff subsequently, on September 30, 2002, filed its complaint seeking relief. Compl. of Aluminerie at 6. The thrust of Plaintiff's complaint is that Customs failed to pay interest on the refunded MPF. Id. at 3-4. Defendant Customs moved to dismiss for lack of subject matter jurisdiction.

## II. Standard of Review

Because Plaintiff is seeking to invoke the Court's jurisdiction, it has the burden to establish the basis for jurisdiction. See Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT ____, ____, 273 F. Supp. 2d 1336, 1338 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). At the same time, as Defendant's motion to dismiss challenges the sufficiency of Plaintiff's pleadings (as opposed to the factual basis underlying the pleadings), the Court will accept all facts alleged in Plaintiff's pleading as true. Corrpro Cos. v. United States, slip. op. 03-59, at 4 (CIT June 4, 2003).

---

[12]Plaintiff failed to provide the Court a copy of this letter. However, as the letter is not a determinative factor in this action, this lack of evidence has no effect on the Court's decision.

## III. Discussion

Plaintiff seeks to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a), or alternatively under 28 U.S.C. § 1581(i). Compl. of Aluminerie at 1. Title 28 U.S.C. § 1581(a) confers jurisdiction over actions based on denials of protests. Title 28 U.S.C. § 1581(i), on the other hand, is a residual provision that confers jurisdiction over certain international trade-related disputes not covered by subsections (a)-(h). Id. In the event that the Court finds jurisdiction lacking, Plaintiff argues that the Court should transfer this action to the United States Court of Federal Claims, as it considers that court to have concurrent jurisdiction under 28 U.S.C. § 1491. Pl.'s Opp'n at 8-12. The Court first discusses subject matter jurisdiction under § 1581(a) and § 1581(i), and then discusses the prospect of transfer to the United States Court of Federal Claims.

### A. Subject Matter Jurisdiction

Plaintiff seeks to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a), or alternatively under 28 U.S.C. § 1581(i). Compl. of Aluminerie at 1. Defendant makes four arguments in its motion for lack of subject matter jurisdiction. First, it argues that jurisdiction is lacking under 28 U.S.C. § 1581(a), because Plaintiff failed to timely and properly file a protest. Def.'s Mot. at 3-4. Second, Defendant claims that 28 U.S.C. § 1581(i)

does not confer jurisdiction, as Plaintiff failed to follow procedural requirements for filing an action under this statutory provision. Id. at 6. Third, Defendant argues that subsection (i) of 28 U.S.C. § 1581 cannot confer jurisdiction where a remedy was potentially available under subsection (a). Id. at 5. Fourth, Defendant argues that the action under 28 U.S.C. § 1581(i) was untimely commenced. Id. at 9. The Court will discuss separately the two statutory provisions involved. First, the Court will discuss jurisdiction under 28 U.S.C. § 1581(a). Subsequently, it will briefly address jurisdiction pursuant to 28 U.S.C. § 1581(i), as well as the prospects for transfer to the United States Court of Federal Claims.

### 1. 28 U.S.C. § 1581(a)

In its complaint, Plaintiff initially alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1581(a), which provides as follows: "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). Section 515 of the Tariff Act of 1930, as amended at 19 U.S.C. § 1515, provides for administrative review of protests. 19 U.S.C. § 1515. Subsection (a) of § 1515 stipulates that Customs "shall review the protest and shall allow or deny such protest in whole or in part" as long as it is filed in

accordance with 19 U.S.C. § 1514.  19 U.S.C. § 1515(a).   Title 19

U.S.C. § 1514 describes the requirements for filing protests.  19

U.S.C. § 1514.   A suit attempting to invoke the Court's

jurisdiction under 28 U.S.C. § 1581(a) must therefore be based on

a protest which complies with the requirements of § 1514.

Among other things, § 1514 establishes two requirements for

protests: contents and timing.  19 U.S.C. § 1514(c).  Title 19

U.S.C. § 1514(c)(1)[13] and title 19 C.F.R. § 174.13(a)[14] of the

agency's regulations both govern the contents of protests.  The

Court liberally construes the requirements of 19 U.S.C. §

1514(c)(1).  <u>Ammex, Inc. v. United States</u>, 27 CIT ____, ____, 288

---

[13]Title 19 U.S.C. § 1514(c)(1) provides in pertinent part:

> A protest must set forth distinctly and specifically--
>   (A) each decision . . . as to which protest is made;
>   (B) each category of merchandise affected by each
>   decision . . . ;
>   (C) the nature of each objection and the reasons
>   therefor; and
>   (D) any other matter required by the Secretary by
>   regulation.

<u>Id.</u>

[14]The implementing regulation 19 C.F.R. § 174.13(a) specifies in
pertinent part that protests must contain:

> (1) The name and address of the protestant . . . ;
> . . .
> (3) The number and date of the entry;
> . . .
> (5) A specific description of the merchandise affected
> by the decision as to which protest is made;
> (6) The nature of, and justification for the objection
> set forth distinctly and specifically with respect to
> each category, payment, claim, decision, or refusal.

<u>Id.</u>

F. Supp. 2d 1375, 1382 (2003) (acknowledging that there is a "long line of cases taking a liberal posture as to what constitutes a valid protest").  In <u>Mattel, Inc. v. United States</u>, for example, the Court held that a letter requesting reliquidation under the wrong statutory provision constituted a valid protest, despite its error.  72 Cust. Ct. 257, 266, 377 F. Supp. 955, 963 (1974). Further, the <u>Mattel, Inc.</u> Court concluded that "however cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of [19 U.S.C. § 1514] if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought."  <u>Mattel, Inc.</u>, 72 Cust. Ct. at 262, 377 F. Supp. at 960.

Directly relevant to this dispute, 19 U.S.C. § 1514 governs the timing of protests.  Title 19 U.S.C. § 1514(c)(3) provides as follows:

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before--
> (A) notice of liquidation or reliquidation, or
> (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

19 U.S.C. § 1514(c)(3).

Both parties to this action agree that because Plaintiff's entries were never liquidated, subparagraph (B) of 19 U.S.C. § 1514(c)(3) applies.  Def.'s Mot. at 3; Pl.'s Opp'n at 5.

As a sovereign entity, the United States is immune from suit

unless it consents to be sued.  <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (<u>quoting</u> <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941)).  Title 28 U.S.C. § 1581(a) constitutes an explicit waiver of immunity by the United States.  <u>US JVC Corp. v. United States</u>, 22 CIT 687, 694, 15 F. Supp. 2d 906, 913 (1998).  Previous judicial decisions have therefore held that the statutory timing requirement for protests is a mandatory term of the United States' consent to suit pursuant to 28 U.S.C. § 1581(a).  <u>United States v. Boe</u>, 64 Ct. Cust. App. 11, 15-16, 543 F.2d 151, 154-55 (1976) (holding that the Customs Court lacked jurisdiction when Plaintiff failed to comply with all terms of consent by the United States mandated by 28 U.S.C. § 1582 (1976), the predecessor to 28 U.S.C. § 1581(a) (2000)).  Accordingly, the Court must construe the timing requirement strictly.   <u>Boe</u>, 64 Ct. Cust. App. at 15, 543 F.2d at 154; <u>see also</u> <u>Star Sales & Distrib. Corp. v. United States</u>, 10 CIT 709, 710, 663 F. Supp. 1127, 1128 (1986) (holding that the Court does not have jurisdiction over an action contesting the denial of a protest filed more than ninety days after notice of liquidation).

The Court now considers Plaintiff's protest in light of the provisions of § 1514.

To apply the requirements of 19 U.S.C. § 1514 to this case, it is necessary to review the contents of Plaintiff's protest, and determine whether that protest challenges any decision by Customs made within the ninety-day period prior to its filing, i.e.,

whether the protest was within the statutory time period.

In its protest, Plaintiff appears to make three objections. See February 1 Letter, Pl.'s Ex. D at 4-6. First, Plaintiff protests the assessment and payment of MPF. Id. at 4. The MPF tender, however, occurred on October 6, 1994, October 6 Letter, Pl.'s Ex. A at 4, while Plaintiff filed its protest on February 6, 1995. Protest Form, Pl.'s Ex. D at 3. Because a time period of more than ninety days elapsed between those two events, Plaintiff's protest fails to present a timely challenge to the assessment and payment of MPF.

Second, Plaintiff protests unanticipated frustration of, and contingencies not foreseen in, the escrow agreement. February 1 Letter, Pl.'s Ex. D at 5-6. Title 19 U.S.C. § 1514(c)(3) states, however, that parties must file protests "within ninety days after but not before . . . the date of the decision as to which protest is made." Id. (emphasis added). The decision the protesting party objects to must therefore occur prior to the filing of the protest. As previously stated, Aluminerie filed its protest on February 6, 1995. Protest Form, Pl.'s Ex. D at 3. To the extent that Plaintiff objects to the unanticipated event of Customs' decision to refund MPF without interest in February 2000, that event had not yet occurred at the time the protest was filed.[15]

_____

[15]Plaintiff claims that Customs made the decision not to pay interest as early as November 8, 1994, the day it sent the November 8 Letter. See Pl.'s Opp'n at 6. However, the parties subsequently signed the escrow agreement, where Customs agreed to

Accordingly, under a plain reading of 19 U.S.C. § 1514(c)(3), Plaintiff's protective protest was untimely and invalid. See A.N. Deringer, Inc. v. United States, 12 CIT 969, 972, 698 F. Supp. 923, 925 (1988) (holding that a protest was invalid either because it was filed the day before Customs denied a previous claim for relief or barred by the provision allowing only one protest per entry of merchandise).

Because the escrow agreement stipulated Customs' obligation to refund Plaintiff the MPF tender along with "interest as may be required by law" in the event that the test case decision was favorable to Aluminerie, Escrow Agreement, Pl.'s Attach. at 1-2, the subsequent non-payment of interest in February 2000 could qualify as an unanticipated event in light of the agreement.[16] However, for the reasons stated above, Plaintiff should have chosen

refund the MPF amount and "interest as may be required by law" if related litigation was successful. Escrow Agreement, Pl.'s Attach. at 1-2. Thus, even presuming that Customs made the decision to deprive Aluminerie of interest at such an early stage, that decision was later vitiated by the terms of the escrow agreement before the filing of the protest. Moreover, even if the escrow agreement did not vitiate Customs' original rejection of any conditions on the payment of MPF, the language of the protest – objecting to unanticipated frustration of the escrow agreement – clearly refers to decisions which had not yet been made, and not to the November 8 Letter.

[16]Plaintiff argues that Customs' failure to pay interest is in violation of 19 U.S.C. § 1505(c), Pl.'s Opp'n at 11, which in pertinent part holds,"[i]nterest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest." 19 U.S.C. § 1505(c). However, as the Court does not have jurisdiction over this action, it will not discuss the legal basis of Plaintiff's claim.

to wait until after Customs' decision not to pay interest before filing its protest.[17]

Third, Plaintiff appears to object to Customs' acceptance of its MPF tender. See February 1 Letter, Pl.'s Ex. D at 4. In its protest, Plaintiff alleges that Customs accepted its payment on November 8, 1994, and specifies that the protest was filed within ninety days of that date. Id. Plaintiff's February 1 Letter further states that Plaintiff attached a copy of the November 8 Letter to the protest, as well as a copy of the receipt from Customs. Id. The receipt, however, shows that Customs received Plaintiff's MPF payment on November 7, 1994. Receipt, Pl.'s Ex. A at 6. The November 8 Letter, on the other hand, indicates that Customs acknowledged the MPF tender, and that Customs intended not to accept the tender's contingencies. November 8 Letter, Pl.'s Ex. B at 1. Consequently, the Court cannot conclude that Customs' acceptance of Plaintiff's tender took place on November 8, 1994. Rather, acceptance occurred a day prior, when Customs received payment and made out the receipt. Customs therefore, on November 7, 1994, made the decision Plaintiff attempted to protest; November 7 was, however, ninety-one days prior to the filing of the protest

---

[17]Title 19 U.S.C. § 1514(c) provides that parties may generally only file one protest per entry of merchandise. Although the Court does not so decide, it may have been possible for Plaintiff, even after filing the untimely protest at issue here, to file a second protest following Customs' non-payment of interest, arguing that, as its previous protest was untimely filed, it was legally invalid, and therefore should not count against the single-protest rule.

in question here.   Accordingly, Plaintiff's protest fails to present a timely, valid challenge to Customs' acceptance of MPF tender, as Plaintiff filed that protest more than ninety days after Customs' decision.

Based on the analysis above, the Court concludes that Plaintiff's protest dated February 6, 1995, was untimely filed, as Plaintiff failed to file it within ninety days of the Customs decisions that it seeks to challenge.  Plaintiff, however, sets forth one additional argument to support its contentions that it filed a timely protest.

Aluminerie appears to argue that its subsequent actions cured the defects of the untimely protest.  Plaintiff claims that it properly filed, on February 10, 2000, a request for accelerated disposition of protest pursuant to 19 U.S.C. § 1515(b).[18]  Pl.'s Opp'n at 4-5.  However, such a request cannot cure a timing defect in the underlying protest.  For Plaintiff's claim to be within the Court's jurisdiction, the referenced protest must first be filed in accordance with 19 U.S.C. § 1514.  As Plaintiff's protest was untimely, Plaintiff's subsequent request for accelerated disposition could not revive it.[19]

---

[18]Title 19 U.S.C. § 1515(b) states in pertinent part that "[a] request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed . . . any time after ninety days following the filing of such protest." Id.

[19]Additionally, Plaintiff could not have cured the timing defect through an amendment of the protest, as 19 U.S.C. § 1514(c)(1)

The Court therefore holds that the protest dated February 6, 1995, was untimely and improperly filed. Moreover, Plaintiff's subsequent acts failed to cure or amend its original protest. Because Plaintiff failed to file a valid protest, Customs' decisions are final and this Court lacks jurisdiction under 28 U.S.C. § 1581(a). New Zealand Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994) (holding that although the jurisdiction limitation also works to make decisions final and conclusive upon the government unless it acts to revise them within the limitations period, there was no such decision that triggered the ninety-day period and consequently a failure to invoke jurisdiction); Hambro Auto. Corp. v. United States, 66 Ct. Cust. App. 113, 117, 603 F.2d 850, 853 (1979) (holding that refusal by customs officials to reliquidate entries became final and conclusive upon the importer when it failed to file a protest within the previously mandated sixty-day limitations period); Everflora Miami, Inc. v. United States, 19 CIT 485, 487, 885 F. Supp. 243, 246 (1995), aff'd, 86 F.3d 1174 (Fed. Cir. 1996) (holding that the Court lacked jurisdiction over Customs' allegedly erroneous duty assessments because the importer failed to timely protest liquidation, which thereby made the Customs decision final and conclusive upon the parties).

---

states that an amendment must take place "any time prior to the expiration of the time in which such protest could have been filed." Id. Therefore, because the original protest was untimely, any amendments to the protest were also untimely.

## 2. 28 U.S.C. § 1581(i)

In the event that jurisdiction under 28 U.S.C. § 1581(a) fails, Plaintiff argues that 28 U.S.C. § 1581(i) confers subject matter jurisdiction on the Court.  Compl. of Aluminerie at 1.  To invoke jurisdiction under 28 U.S.C. § 1581(i), however, Plaintiff must file its summons and complaint at the same time.  See 28 U.S.C. § 2632(a);[20] USCIT R. 3(a)(3).[21]  Plaintiff filed its summons

---

[20]Title 28 U.S.C. § 2632 provides in pertinent part:

> (a) Except for civil actions specified in subsections (b) and (c) of this section, a civil action in the Court of International Trade shall be commenced by filing concurrently with the clerk of the court a summons and complaint."

Id.  Subsections (b) and (c) refer to actions filed under sections 515, 516, or 516A of the Tariff Act of 1930, and therefore are claims pursuant to 28 U.S.C. § 1581(a), (b), and (c).  Cf. 19 U.S.C. § 1515-16 with 28 U.S.C. § 1581(a)-(c).  Consequently, because Plaintiff seeks to invoke the Court's jurisdiction under 28 U.S.C. § 1581(i), subsection (a) of 28 U.S.C. § 2632 applies.

[21]Rule 3 of the Court's rules states:

> (a) Commencement. A civil action is commenced by filing with the clerk of the court:
>     (1) A summons in an action described in 28 U.S.C. § 1581(a) or (b);
>     (2) A summons, and within [thirty] days thereafter a complaint, in an action described in 28 U.S.C. § 1581(c) to contest a determination listed in section 516A(a)(2) or (3) of the Tariff Act of 1930; or
>     (3) A summons and complaint concurrently in all other actions.

USCIT R. 3.  Accordingly, in order to invoke jurisdiction under 28 U.S.C. § 1581(i), subsection (3) requires that a plaintiff files the summons and complaint concurrently.  USCIT R. 3(a)(3).

on September 7, 2000, and subsequently its complaint on September 30, 2002.  Summons of Aluminerie at 2; Compl. of Aluminerie at 6. Because Plaintiff did not file the summons and complaint concurrently, it fails to properly invoke jurisdiction pursuant to 28 U.S.C. § 1581(i).[22]

### B. Transfer to the United States Court of Federal Claims

In the alternative, Plaintiff requests transfer of its action to the United States Court of Federal Claims,  Pl.'s Opp'n at 8, arguing that, in the interest of justice, 28 U.S.C. § 1631 permits transfer of the case where the Court does not have jurisdiction.[23] Id. at 9.  Citing 28 U.S.C. § 1491(a)(1), Plaintiff argues that because it could have originally brought its action in the United States Court of Federal Claims, the action may now be transferred to that court.[24]  Pl.'s Opp'n at 9-10.

---

[22]Defendant also argues that subsection (i) of 28 U.S.C. § 1581 cannot confer jurisdiction when another remedy was potentially available under subsection (a), and that any claim intended under subsection (i) was untimely filed.  Def.'s Mot. at 5-9.  However, it is not necessary for the Court to reach this issue.

[23]Title 28 U.S.C. § 1631 stipulates in pertinent part, "[if a] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed."  Id.

[24]Title 28 U.S.C. § 1491(a)(1) provides in pertinent part, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States."  Id.  Plaintiff argues that 28 U.S.C. § 1491(a)(1) confers jurisdiction over its claims, as they arise from the

Congress, however, has conferred on the United States Court of International Trade exclusive jurisdiction over certain customs-related matters. K Mart Corp. v. Cartier, Inc., 485 U.S. 176, 188 (1988). Jurisdiction may then lie either in the United States Court of International Trade or in another federal court, but not in both. In Vivitar Corp. v. United States, the Federal Circuit laid out the analysis to be followed when it appears that both the United States Court of International Trade and another federal court, may have jurisdiction over a claim, stating:

> "[I]t is faulty analysis to look first to the jurisdiction of the district courts to determine whether the [United States Court of International Trade] has jurisdiction. . . . The focus must be solely on whether the claim falls within the language and intent of the jurisdiction grant to the [United States Court of International Trade]."

Vivitar Corp. v. United States, 761 F.2d 1552, 1559-60 (Fed. Cir. 1985), cert. denied, 474 U.S. 1055 (1986). Accordingly, the correct approach for distinguishing actions invoking the jurisdiction granted exclusively to the United States Court of International Trade is to focus on whether a claim falls within the language of a statute conferring jurisdiction on this Court.

Subsection (a) of 28 U.S.C. § 1581 confers exclusive jurisdiction on the United States Court of International Trade over actions involving the denial of a protest. 28 U.S.C. § 1581(a). Consequently, under the jurisdictional scheme established for the

escrow agreement concluded by the parties. Pl.'s Opp'n at 10.

United States Court of International Trade, when an action arises under such a provision, that jurisdiction is exclusive and operates to the exclusion of all other courts.  See K Mart Corp.,  485 U.S. at 182-83; Orleans Int'l, Inc. v. United States, 334 F.3d 1375, 1378 (Fed. Cir. 2003); Vivitar Corp., 761 F.2d at 1559-60. Pursuant to 28 U.S.C. § 1581(a), the United States Court of International Trade therefore divests the United States Court of Federal Claims of jurisdiction over all actions involving the denial of a protest.[25]

Although Plaintiff failed to properly invoke this Court's jurisdiction due to procedural flaws, Plaintiff's action arises from the denial of a protest, and remains within the language of 28 U.S.C. § 1581(a).  Moreover, although Plaintiff may claim a cause of action in the Court of Federal Claims under the escrow agreement, Customs' refusal to pay interest on Plaintiff's MPF payment was clearly protestable.[26]  Accordingly, this Court's

---

[25]There is additional support for this conclusion in a previous decision by the United States Court of Federal Claims. See Macrotel Int'l Corp. v. United States, 34 Fed. Cl. 98, 99 (1995) (holding that because it fell within the exclusive jurisdiction of the United States Court of International Trade, the United States Court of Federal Claims lacked jurisdiction over a matter that was protested or "protestable").

[26]Title 19 U.S.C. § 1514(a) lists those decisions of Customs' which are subject to protest. See 19 U.S.C. § 1514(a).  They include all decisions relating to "charges and exactions of whatever character" and "the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein." Even if Customs' refusal to pay interest on the MPF refund did not constitute a charge or exaction under 19 U.S.C. § 1514(a)(3), it was clearly related to reconciliation of the liquidation of an

jurisdiction continues to operate to the exclusion of all other courts.  See  28 U.S.C. § 1491(c).[27]  Consequently, because the United States Court of Federal Claims lacked jurisdiction over Plaintiff's action at the time it was filed with this Court, the Court denies Plaintiff's request to transfer its action to that Court.  See 28 U.S.C. § 1631.

## IV. Conclusion

For the reasons stated above, Customs' motion to dismiss is granted.  Aluminerie's action is dismissed.

                                        /s/Donald C. Pogue

                                    Donald C. Pogue,
                                    Judge


Dated:     April 23, 2004
           New York, New York

---

entry under 19 U.S.C. § 1514(a)(5).  See United States v. Universal Fruits & Vegetables Corp., No. 02-55340, slip op. at 17 (9th Cir. 2004) (citing Heller, Ehrman, White & MacAuliffe v. Babbitt, 992 F.2d 360, 363-64( D.C. Cir. 1993); Conoco, Inc. v. United States Foreign-Trade Zones Bd., 18 F.3d 1581, 1586-89 (Fed. Cir. 1994); J.C. Penney Co. v. United States Treas. Dep't, 439 F.2d 63, 66-68 (2d. Cir 1971).

[27]Title 28 U.S.C. § 1491(c), governing the jurisdiction of the Court of Federal Claims, provides in pertinent part, "[n]othing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade."  28 U.S.C. § 1491(c).