**Slip Op. 04-155**

**United States Court of International Trade**

CANADIAN REYNOLDS METALS COMPANY,
c/o REYNOLDS METALS COMPANY,

                  Plaintiff,

        v.

UNITED STATES,

                  Defendant.

Before: Pogue, Judge

Court No. 00-00444

[Defendant's motion to dismiss granted.]

Decided: December 8, 2004

LeBoeuf, Lamb, Greene & MacRae, LLP (Gary P. Connelly, Melvin S. Schwechter) for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Acting Attorney-in-Charge, International Trade Field Office, James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Yelena Slepak, Attorney, Of Counsel, Office of Assistant Chief Counsel, U.S. Bureau of Customs and Border Protection, for Defendant.

**OPINION**

**Pogue, Judge:** Plaintiff Canadian Reynolds Metals Company ("CRMC" or "Plaintiff") seeks to invoke the Court's jurisdiction to challenge the denial of its administrative protest. Plaintiff's protest sought to challenge the imposition of certain Merchandise Processing Fees ("MPF") on Plaintiff's imports.

Defendant United States Bureau of Customs and Border

Protection[1] ("Customs" or "Defendant") moves for dismissal claiming

lack of subject matter jurisdiction because Plaintiff failed to

properly and timely file its protest.  Because Plaintiff's protest,

which objected to three separate actions by Customs, was untimely

as to two of the actions, and because the third action was not

protestable under 19 U.S.C. § 1514 (2000)[2], Defendant's motion to

dismiss is granted.[3]

---

[1]Effective March 1, 2003, the United States Customs Service was
renamed the United States Bureau of Customs and Border
Protection.  See Homeland Security Act of 2002, Pub. L. No. 107-
296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308;
Reorganization Plan Modification for the Department of Homeland
Security, H.R. Doc. No. 108-32, at 4 (2003).

[2]Because Plaintiff filed its summons in 2000, Summons of CRMC at
2, the Court will refer to the 2000 versions of the statutes or
regulations.  The Court acknowledges, however, that because the
events related to this action took place over an extended period
of time, various versions of each of the statutes and regulations
involved may apply.  Accordingly, the Court has reviewed the
versions from 1994 until the present and found that no amendments
affecting the outcome of this case have occurred.  The Court
notes that subsection (c) of 28 U.S.C. § 1491, see infra note 25,
was redesignated from subsection (b) to subsection (c) in 1996.
See Administrative Dispute Resolution Act of 1996, Pub. L. No.
104-320 § 12, 110 Stat. 3870, 3874 (codified as amended at 28
U.S.C. § 1491 (2000)).

[3]In Canadian Reynolds Metals Co. v. United States, slip. op. 04-
39 (CIT Apr. 23, 2004), the Court granted Defendant's motion.
However, pursuant to USCIT R. 59(a) ( stating that a "rehearing
may be granted . . . in an action finally determined"), the
Court, on June 8, 2004, and on July 14, 2004, vacated its earlier
judgment and denied Defendant's motion to dismiss.  See Canadian
Reynolds Metals Co. v. United States, slip. op. 04-85 (CIT July
14, 2004). Due to the probable relevance of an issue which had
not been briefed by the parties – the applicability of the
holding in U.S. Shoe Corp. v. United States, 114 F.3d. 1564 (Fed.
Cir. 1997) that passive acceptance of funds does not constitute a
protestable Customs decision – the Court ordered its July 14,

## I. Background

Plaintiff's administrative protest has a twelve-year history, a review of which is necessary background for the motion at issue here. On December 15, 1992, CRMC made a voluntary disclosure to Customs under 19 U.S.C. § 1592(c)(4), admitting that it had failed to pay certain MPF on unwrought aluminum products imported into the United States between 1990 and the date of disclosure. Def.'s Mem. Supp. Mot. Dismiss at 1-2 ("Def.'s Mot."); Pl.'s Opp'n to Mot. Dismiss at 1 ("Pl.'s Opp'n"). On September 19, 1994, Customs requested that CRMC tender $54,487.69 to perfect the voluntary disclosure. Complaint of CRMC at para. 5. CRMC paid the requested amount on October 6, 1994. See Letter from John Barry Donohue, Jr., Assoc. Gen. Counsel, Reynolds Metals Co., to William D. Dietzel, Dist. Dir., Customs, Pl.'s Ex. A at 1,[4] 3 (Oct. 6, 1994) ("October 6 Letter").[5]

Along with its payment, CRMC submitted a letter in which it

---

2004 judgment stayed pending further briefing. See Order (CIT Aug. 12, 2004). The Court now withdraws that opinion and order.

[4]Documents appended to Pl.'s Opp'n are referred to as "Pl.'s Ex." followed by the corresponding letter.

[5]The record shows that all correspondence and documentation referred to in this decision was either addressed to or sent by Reynolds Metals Company, in its capacity as owner of Canadian Reynolds Metals Company. Reynolds Metals Company also owns Aluminerie Becancour, Inc., which is the Plaintiff in a companion case before the Court. Aluminerie Becancour, Inc. v. United States, Court No. 00-00445, slip op. 04-156 (CIT December 8, 2004).

advised Customs of its intent to appeal the MPF determination, as it considered its entries exempt from the MPF rate demanded by Customs. Id. at 1. CRMC argued that the unwrought aluminum products were of Canadian origin, and thus qualified for special treatment pursuant to the United States-Canada Free Trade Agreement ("USCFTA"). Letter from Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, to Dist. Dir., Customs, Pl.'s Ex. D at 4, 4-5 (Feb. 1, 1995) ("February 1 Letter").[6] Customs, on the other hand, had previously concluded that due to a non-Canadian additive, CRMC's entries failed to qualify for the reduced MPF rate provided by the USCFTA. Id. at 5. CRMC, in turn, argued that pursuant to the doctrine of de minimis non curat lex, the foreign additive in the Canadian entries should be disregarded for country of origin purposes. Id. CRMC informed Customs in its payment tender letter that it expected a full refund of the tender amount along with accrued interest in the event that subsequent litigation was successful. October 6 Letter, Pl.'s Ex. A at 1.

Customs responded in a letter dated November 8, 1994, stating that it had received CRMC's tender of MPF, but rejected all conditions imposed by CRMC in connection to this payment. Letter from Charles J. Reed, Fines, Penalties & Forfeitures Officer, on behalf of William D. Dietzel, Dist. Dir., Customs, to John Barry

---

[6] Barnes, Richardson & Colburn was Plaintiff's legal representative at the time. See February 1 Letter, Pl.'s Ex. D at 4.

Donohue, Reynolds Metals Co., Pl.'s Ex. B at 1 (Nov. 8, 1994) ("November 8 Letter"). Subsequently, Customs and CRMC concluded an escrow agreement on December 20, 1994, in which they agreed to let the decision in a designated test case[7] control whether a full refund of CRMC's MPF payment was appropriate. Agreement between Canadian Reynolds Metals Company and U.S. Customs Service, Pl.'s Ex. C at 1 (Dec. 20, 1994) ("Escrow Agreement" or "the Agreement"). In the event that the test case decision was favorable to CRMC, Customs further agreed to refund the full tendered amount "together with such interest as may be required by law." Id. at 1-2.

On February 6, 1995, CRMC filed an administrative protest. See Letter from Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, to Dist. Dir., Customs, Pl.'s Ex. D. at 1 (Feb. 6, 1995) ("February 6 Letter"); Protest No. 0712-95-100131, Pl.'s Ex. D at 3 (Feb. 6, 1995) ("Protest Form").[8] In its protest, Plaintiff

---

[7]In subsequent amendments to the escrow agreement, concluded on October 28, 1996, and July 13, 1998, the parties identified the designated test case as Alcan Aluminum Corp. v. United States, 21 CIT 1238, 986 F. Supp. 1436 (1997), originally referred to as St. Albans Protest No. 0201-93-100281 (HQ 955367) and subsequently appealed to the Federal Circuit Court of Appeals. Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 3, 4 (Oct. 30, 1996); Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 5, 6 (July 13, 1998); Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999).

[8]The "protest package" provided as Exhibit D by Plaintiff contains copies of two letters along with a copy of a completed Customs Form 19 (Protest No. 0712-95-100131); the first letter is dated February 1, 1995, and the second letter is dated February

appeared to make three objections to Customs' actions. First, Plaintiff stated that it objected to the assessment and payment of MPF. February 1 Letter, Pl.'s Ex. D at 4. Second, it protested "contingencies not anticipated in the [escrow] [a]greement[,] or unanticipated frustration" of the same. Id. at 5-6. Plaintiff then appears to have made a third objection, referring to Customs' acceptance of payment. Id. at 4. In support of this third objection, Plaintiff noted that a copy of Customs' letter dated November 8, 1994, as well as a receipt of payment made out by Customs on November 7, 1994, was enclosed with the protest. Id.; see also Collection Receipt from U.S. Bureau of Customs & Border Prot., to Canadian Reynolds Metals Co., Pl.'s Ex. A at 5 (Nov. 7, 1994) ("Receipt"). Plaintiff clarified in its protest that it did not expect Customs to act in response to its objections until final

---

6, 1995. See Pl.'s Ex. D. Accordingly, it appears as though Plaintiff first attempted to forward a protest to Customs on February 1, 1995, but that for reasons unclear to the Court, the protest was not filed until February 6, 1995, the date Customs received and stamped the protest form. Protest Form, Pl.'s Ex. D at 3. The implementing regulation for filing of protests confirms that a protest is considered filed on the date it is received by Customs. 19 C.F.R. § 174.12(f) ("The date on which a protest is received by the Customs officer with whom it is required to be filed shall be deemed the date on which it is filed."). Additionally, both parties agree that the protest was filed on February 6, 1995. See Def.'s Mot. at 2; Pl.'s Opp'n at 3. As the February 6 Letter merely serves as a complement to the original protest attempt on February 1, 1995, however, the Court will treat the letter dated February 1, 1995, as part of the protest filed on February 6, 1995. See February 6 Letter, Pl.'s Ex. D at 1 ("[W]e forwarded protests, dated February 1, 1995, in which CRMC . . . protested the assessment and payment of Merchandise Processing Fee ('MPF').").

judgment was rendered in the pending test case.  February 1 Letter, Pl.'s Ex. D at 6.

On January 5, 1999, the Federal Circuit Court of Appeals issued its decision in the test case, Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999).  The Alcan Aluminum Corp. Court held that the foreign additive in question was subject to the principle of de minimis non curat lex, and therefore, the entries were considered of Canadian origin.  165 F.3d at 902.  The Alcan Aluminum Corp. decision became final on April 5, 1999.  Pl.'s Opp'n at 4.

Because CRMC's entries qualified for preferential trade status under the USCFTA as a result of the favorable decision in Alcan Aluminum Corp., Customs refunded to CRMC the deposited MPF amount in full "[o]n or about" February 7, 2000.[9]  Compl. of CRMC at 3.

Customs, however, failed to tender interest pursuant to the escrow agreement when it made the refund to CRMC.  Def.'s Mot. at 2; Pl.'s Opp'n at 4.  CRMC then sent, on February 10, 2000, a request for accelerated disposition of its protest.  See Pl.'s Opp'n at 4; Letter from F. D. "Rick" Van Arnam, Jr., Barnes, Richardson, & Colburn, to Port Dir., Customs, Pl.'s Supp. Ex. A (Feb. 9, 2000); Certified Mail Receipt, Pl.'s Supp. Ex. B. (Feb. 10, 2000)  Following what CRMC considered a denial of the original protest by operation of law, it filed a summons with the Court on

---

[9]No supporting exhibit was provided, but Defendant does not deny this statement.  See Def.'s Mem. at 2.

September 7, 2000.  Summons of CRMC at 2.  Plaintiff subsequently, on September 30, 2002, filed its complaint seeking relief.  Compl. of CRMC at 6.  The thrust of Plaintiff's complaint is that Customs failed to pay interest on the refunded MPF.  Id. at 3-4.  As noted above, Defendant Customs moves to dismiss for lack of subject matter jurisdiction.

## II. Standard of Review

Because Plaintiff is seeking to invoke the Court's jurisdiction, it has the burden to establish the basis for jurisdiction.  See Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT ____, ____, 273 F. Supp. 2d 1336, 1338 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  At the same time, "the Court assumes 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

## III. Discussion

Defendant moves to dismiss, alleging that because CRMC failed to timely protest any Customs decision, subject matter jurisdiction under 28 U.S.C. § 1581(a) is lacking.  See Def.'s Mot at 3-4.  That statute, upon which Plaintiff's claim relies, provides for the

review of the denial of a protest made under section 515 of the Tariff Act of 1930, as amended at 19 U.S.C. § 1515. Compl. of CRMC at 1; 28 U.S.C. § 1581(a). Subsection (a) of § 1515 authorizes Customs "to review and deny or allow a protest as long as it is filed in accordance with 19 U.S.C. § 1514. 19 U.S.C. § 1515(a). A suit attempting to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a) must therefore be based on a protest which complies with the requirements of § 1514.

Section 1514 states the requirements for protests, two of which are at issue here. First, the protest must be of a "decision" of the Customs service. 19 U.S.C. § 1514(a). Second, the protest must be timely filed – that is, no more than ninety days after the protested decision. 19 U.S.C. § 1514(c)(3).[10]

In its protest, Plaintiff appears to make three objections. See February 1 Letter, Pl.'s Ex. D at 4-6. First, Plaintiff protests the assessment and payment of MPF. Id. at 4. To the

---

[10]Title 19 U.S.C. § 1514(c)(3) provides as follows:

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before--
>       (A) notice of liquidation or reliquidation, or
>       (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

19 U.S.C. § 1514(c)(3).

extent Plaintiff challenged its own payment of the MPF, the protest is invalid; Plaintiff's tender of payment may be the result of its own decision to do so, but it is not a Customs decision.  The demand for tender, however, appears to be a Customs decision; Customs actively demanded payment of the owed amount.  See Complaint of CRMC at para. 5; Escrow Agreement, Pl.'s Ex. C at 1.  The demand occurred on September 19, 1994, but Plaintiff did not file its protest until February 6, 1995.  Complaint of CRMC at para. 5; Protest Form, Pl.'s Ex. D at 3.  Because a time period of more than ninety days elapsed between the demand and the protest, Plaintiff's protest fails to present a timely challenge to the assessment and payment of MPF.

Second, Plaintiff protests unanticipated frustration of, and contingencies not foreseen in, the escrow agreement.  February 1 Letter, Pl.'s Ex. D at 5-6.  While Customs' eventual refusal to pay interest as required by the escrow agreement may have been a protestable decision, the February 6, 1995 protest is simply untimely with regard to Customs' alleged failure to pay interest as required by law.  Title 19 U.S.C. § 1514(c)(3) states that parties must file protests "within ninety days after but not before . . . the date of the decision as to which protest is made."  Id. (emphasis added).  The decision the protesting party objects to must therefore occur prior to the filing of the protest.  As previously stated, CRMC filed its protest on February 6, 1995.

Protest Form, Pl.'s Ex. D at 3.   To the extent that Plaintiff objects to the unanticipated event of Customs' decision to refund MPF without interest in February 2000, that event had not yet occurred at the time the protest was filed.[11]   Accordingly, under a plain reading of 19 U.S.C. § 1514(c)(3), Plaintiff's protective protest was untimely and invalid.   See A.N. Deringer, Inc. v. United States, 12 CIT 969, 972, 698 F. Supp. 923, 925 (1988) (holding that a protest was invalid either because it was filed the day before Customs denied a previous claim for relief or barred by the provision allowing only one protest per entry of merchandise).

Third, Plaintiff appears to object to Customs' acceptance of its MPF tender.   See February 1 Letter, Pl.'s Ex. D at 4.   But the mere passive acceptance of funds does not constitute a Customs decision under United States Shoe Corp. v. United States, 114, F.3d 1564 (Fed. Cir. 1997).   That case found that Customs' collection of Harbor Maintenance Tax was not protestable, as Customs merely passively accepted the taxes paid pursuant to statute.   Id. at

---

[11]Plaintiff claims that Customs made the decision not to pay interest as early as November 8, 1994, the day it sent the November 8 Letter.   See Pl.'s Opp'n at 6.   However, the parties subsequently signed the Agreement, whereby Customs agreed to refund the MPF amount and "interest as may be required by law" if related litigation was successful.   Escrow Agreement, Pl.'s Ex. C at 1-2.   Thus, even presuming that Customs made the decision to deprive CRMC of interest at such an early stage, that decision was later vitiated by the terms of the Agreement before the filing of the protest.   Moreover, the language of the protest – objecting to unanticipated frustration of the Agreement– clearly refers to decisions which had not yet been made, and not to the November 8 Letter.

1569. Customs was not involved in calculation of the tax; in fact, the burden of calculation and payment was entirely on the taxed party. Id. Customs' function of collection involved no independent thought process on its part, and its collection of funds therefore gave rise to no protestable decision. Id.

The facts here are somewhat different than those in United States Shoe Corp. Here, Customs actively demanded the payment of the owed MPF. See Escrow Agreement, Pl.'s Ex. C at 1. While acceptance of that demanded payment might be considered passive, and therefore not a "decision" under the rule in United States Shoe Corp., Customs did not merely accept Plaintiff's tender. Rather, Customs rejected the contingencies which Plaintiff placed on its tender. See October 6 Letter, Pl.'s Ex. A at 1; November 8 Letter, Pl.'s Ex. B at 1. This rejection required some independent thought on Customs' part; the Court is therefore persuaded that the rejection of contingencies could be regarded as a protestable decision, and thus the acceptance of Plaintiff's tender could have been protestable.

But the fact remains that on February 6, 1995, when Plaintiff protested the acceptance of tender and the rejection of Plaintiff's contingencies, the parties' relationship to one another had been changed by the conclusion of the Agreement. In the Agreement, Customs appears to have changed its position on payment of interest, and agreed that it would pay such interest "as may be

required by law." <u>See</u> Escrow Agreement, Pl.'s Ex. C at 2. The complained-of decision, then, would appear to be moot, being void as a matter of law. Plaintiff, however, argues that the Agreement does not moot the November 8 decision not to pay interest. <u>See</u> Pl.'s Supp. Letter Br. at 3-4 (Nov. 30, 2004). Plaintiff avers that the contingency it placed on its tender was not the requirement to pay "such interest as may be required by law," but rather, simply to pay "interest." <u>Id.</u> at 4-5. Because the tender flatly demanded the payment of interest, with or without legal authorization, and the Escrow Agreement only required payment of interest as required by law, Plaintiff argues that there remains a non-mooted, protestable element to the November 8 rejection of contingencies.

The Court is not persuaded. Plaintiff's escrow agreement was a contract with an arm of the federal government. Federal agencies cannot contract as they choose; their authority to contract is necessarily constrained by the statutes under which the agency operates, by regulations, and by applicable case law. When Plaintiff demanded the payment of interest on its tender, it was, or should have been, well aware that all it could demand of Customs was that Customs pay back such interest as might be required by law. This is precisely what Customs bound itself to in the Agreement.[12, 13]

---

[12]The Court is hard pressed to understand why Plaintiff would have entered into the Agreement were the refund of its money

Therefore, the mere acceptance of Plaintiff's funds was not protestable pursuant to the rule stated in <u>United States Shoe Corp.</u>, and the rejection of contingencies, which had constituted an active and protestable decision, was void as a matter of law as a result of the Agreement.

Accordingly, the protest upon which this case was brought was untimely filed as to two of the decisions to which Plaintiff objected, and the third objected decision was void as a matter of law and therefore not protestable. Accordingly, Customs' motion to dismiss is hereby granted, and the Court enters judgment for Defendant.

                                        /s/Donald C. Pogue
                                        Donald C. Pogue,
                                             Judge


        Dated:     December 8, 2004
                   New York, New York

---

along with "such interest as may be required by law" manifestly disagreeable to it.  The Agreement moots the November 8 letter either because it represents Customs' acceptance of contingencies, or because it represents Plaintiff's negotiated determination to abandon its claim to forms of interest other than those "required by law."

[13]Because the Court finds that the protestable portion of the November 8 letter was rendered legally void by the escrow agreement, the Court need not reach the question of whether the protest was timely filed as to this issue.