**Slip Op. 04-156**

**United States Court of International Trade**

<table>
<tr><td>

ALUMINERIE BECANCOUR, INC.,<br>
c/o REYNOLDS METALS COMPANY,<br><br>
              Plaintiff,<br><br>
      v.<br><br>
UNITED STATES,<br><br>
              Defendant.

</td><td>

Before: Pogue, Judge<br><br>
Court No. 00-00445

</td></tr>
</table>

[Defendant's motion to dismiss granted.]

Decided: December 8, 2004

LeBoeuf, Lamb, Greene & MacRae, LLP (Gary P. Connelly, Melvin S. Schwechter) for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Acting Attorney-in-Charge, International Trade Field Office, James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Yelena Slepak, Attorney, Of Counsel, Office of Assistant Chief Counsel, U.S. Bureau of Customs and Border Protection, for Defendant.

**OPINION**

**Pogue, Judge:** Plaintiff Aluminerie Becancour, Inc. ("Aluminerie" or "Plaintiff") seeks to invoke the Court's jurisdiction to challenge the denial of its administrative protest. Plaintiff's protest sought to challenge the imposition of certain Merchandise Processing Fees ("MPF") on Plaintiff's imports.

Defendant United States Bureau of Customs and Border Protection[1] ("Customs" or "Defendant") moves to dismiss, claiming lack of subject matter jurisdiction because Plaintiff failed to timely file its protest. Because Plaintiff's protest, which objected to three separate actions by Customs, was untimely as regards two actions, and because the third action was not protestable under 19 U.S.C. § 1514 (2000)[2], Defendant's motion to dismiss is granted.[3]

---

[1]Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

[2]Because Plaintiff filed its summons in 2000, Summons of Aluminerie at 2, the Court will refer to the 2000 versions of the statutes or regulations. The Court acknowledges, however, that because the events related to this action took place over an extended period of time, various versions of each of the statutes and regulations involved may apply. Accordingly, the Court has reviewed the versions from 1994 until the present and found that no amendments affecting the outcome of this case have occurred.

[3]In Aluminerie Becancour, Inc. v. United States, slip. op. 04-40 (CIT Apr. 23, 2004), the Court granted Defendant's motion. However, pursuant to USCIT R. 59(a) (stating that a "rehearing may be granted . . . in an action finally determined"), the Court, on June 8, 2004, ordered reconsideration of its April 23 opinion and on July 14, 2004, vacated its earlier judgment and denied Defendant's motion to dismiss. See Aluminerie Becancour, Inc. v. United States, slip. op. 04-86 (CIT July 14, 2004). Due to the probable relevance of an issue which had not been briefed by the parties – the applicability of the holding in U.S. Shoe Corp. v. United States, 114 F.3d. 1564 (Fed. Cir. 1997) that passive acceptance of funds does not constitute a protestable Customs decision – the Court ordered its July 14, 2004 opinion and order stayed pending further briefing. See Order (CIT Aug. 12, 2004). The Court now withdraws that opinion and order.

## I. Background

Plaintiff's administrative protest has a twelve-year history, a review of which is necessary background for the motion at issue here. On December 15, 1992, Aluminerie made a voluntary disclosure to Customs under 19 U.S.C. § 1592(c)(4), admitting that it had failed to pay MPF on unwrought aluminum products imported into the United States between 1990 and the date of disclosure. Def.'s Mem. Supp. Mot. Dismiss at 1-2 ("Def.'s Mot."); Pl.'s Opp'n to Mot. Dismiss at 1 ("Pl.'s Opp'n"). On September 9, 1994, Customs requested that Aluminerie tender $88,542.87 to perfect the voluntary disclosure. Complaint of Aluminerie at para. 5. Aluminerie paid the requested amount on October 6, 1994. See Letter from John Barry Donohue, Jr., Assoc. Gen. Counsel, Reynolds Metals Co., to William D. Dietzel, Dist. Dir., Customs, Pl.'s Ex. A at 1,[4] 4 (Oct. 6, 1994) ("October 6 Letter").[5]

Along with its payment, Aluminerie submitted a letter in which it advised Customs of its intent to appeal the MPF determination,

---

[4]Documents appended to Pl.'s Opp'n are referred to as "Pl.'s Ex." followed by the corresponding letter. The document appended to Plaintiff's motion for leave to amend its memorandum of opposition is referred to as "Pl.'s Attach."

[5]The record shows that all correspondence and documentation referred to in this decision was either addressed to or sent by Reynolds Metals Company, in its capacity as owner of Aluminerie Becancour, Inc. Reynolds Metals Company also owns Canadian Reynolds Metals Company, which is the Plaintiff in a companion case before the Court. Canadian Reynolds Metals Co. v. United States, Court No. 00-00444, slip op. 04-155 (CIT December 8, 2004).

as it considered its entries exempt from the MPF rate demanded by Customs. Id. at 1. Aluminerie argued that the unwrought aluminum products were of Canadian origin, and thus qualified for special treatment pursuant to the United States-Canada Free Trade Agreement ("USCFTA"). Letter from Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, to Dist. Dir., Customs, Pl.'s Ex. D at 4, 4-5 (Feb. 1, 1995) ("February 1 Letter").[6] Customs, on the other hand, had previously concluded that due to a non-Canadian additive, Aluminerie's entries failed to qualify for the reduced MPF rate provided by the USCFTA. Id. at 5. Aluminerie, in turn, argued that pursuant to the doctrine of de minimis non curat lex, the foreign additive in the Canadian entries should be disregarded for country of origin purposes. Id. Aluminerie informed Customs in its payment tender letter that it understood that Customs would refund the full amount, with interest, were Plaintiff to be successful in its appeal to the Court of International Trade of Customs decision to collect the MPF. October 6 Letter, Pl.'s Ex. A at 1.

Customs responded in a letter dated November 8, 1994, stating that it had received Aluminerie's tender of MPF, but rejected all conditions imposed by Aluminerie in connection to this payment. Letter from Charles J. Reed, Fines, Penalties & Forfeitures

---

[6]Barnes, Richardson & Colburn was Plaintiff's legal representative at the time. See February 1 Letter, Pl.'s Ex. D at 4.

Officer, on behalf of William D. Dietzel, Dist. Dir., Customs, to John Barry Donohue, Reynolds Metals Co., Pl.'s Ex. B at 1 (Nov. 8, 1994) ("November 8 Letter"). Subsequently, Customs and Aluminerie concluded an escrow agreement on December 20, 1994, in which they agreed to let the decision in a designated test case[7] control whether a full refund of Aluminerie's MPF payment was appropriate. Agreement between Reynolds Metals Company and U.S. Customs Service, Pl.'s Attach. at 1 (Dec. 20, 1994) ("Escrow Agreement" or "the Agreement").[8] In the event that the test case decision was favorable to Aluminerie, Customs further agreed to refund the full tendered amount "together with such interest as may be required by law." Id. at 2.

On February 6, 1995, Aluminerie filed an administrative protest. See Letter from Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, to Dist. Dir., Customs, Pl.'s Ex. D at 1 (Feb. 6, 1995) ("February 6 Letter"); Protest No. 0712-95-100130,

---

[7]In subsequent amendments to the escrow agreement, concluded on October 28, 1996, and July 13, 1998, the parties identified the designated test case as Alcan Aluminum Corp. v. United States, 21 CIT 1238, 986 F. Supp. 1436 (1997), originally referred to as St. Albans Protest No. 0201-93-100281 (HQ 955367) and subsequently appealed to the Federal Circuit Court of Appeals. Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 3, 4 (Oct. 30, 1996); Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 5, 6 (July 13, 1998); Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999).

[8]Reynolds Metals Company concluded the agreement with Customs on behalf of Plaintiff. See Escrow Agreement, Pl.'s Attach. at 1.

Pl.'s Ex. D at 3 (Feb. 6, 1995) ("Protest Form").[9]  In its protest,

Plaintiff appeared to make three objections to Customs' actions.

First, Plaintiff stated that it objected to the assessment and

payment of MPF.  February 1 Letter, Pl.'s Ex. D at 4.  Second, it

protested "contingencies not anticipated in the [Escrow]

[A]greement[,] or unanticipated frustration" of the same.  Id. at

5-6.  Plaintiff then appears to have made a third objection,

referring to Customs' acceptance of payment.  Id. at 4.  In support

of this third objection, Plaintiff noted that a copy of Customs'

letter dated November 8, 1994, as well as a receipt of payment made

out by Customs on November 7, 1994, was enclosed with the protest.

Id.; see also Collection Receipt from U.S. Bureau of Customs &

---

[9]The "protest package" provided as Exhibit D by Plaintiff
contains copies of two letters along with a copy of a completed
Customs Form 19 (Protest No. 0712-95-100130); the first letter is
dated February 1, 1995, and the second letter is dated February
6, 1995.  See Pl.'s Ex. D.  Accordingly, it appears as though
Plaintiff first attempted to forward a protest to Customs on
February 1, 1995, but that for reasons unclear to the Court, the
protest was not filed until February 6, 1995, the date Customs
received and stamped the protest form.  Protest Form, Pl.'s Ex. D
at 3.  The implementing regulation for filing of protests
confirms that a protest is considered filed on the date it is
received by Customs.  19 C.F.R. § 174.12(f) ("The date on which a
protest is received by the Customs officer with whom it is
required to be filed shall be deemed the date on which it is
filed.").  Additionally, both parties agree that the protest was
filed on February 6, 1995.  See Def.'s Mot. at 2; Pl.'s Opp'n at
3.  As the February 6 Letter merely serves as a complement to the
original protest attempt on February 1, 1995, however, the Court
will treat the letter dated February 1, 1995, as part of the
protest filed on February 6, 1995.  See February 6 Letter, Pl.'s
Ex. D at 1 ("[W]e forwarded protests, dated February 1, 1995, in
which [Aluminerie] protested the assessment and payment of
Merchandise Processing Fee ('MPF').").

Border Prot., to Aluminerie Becancour, Pl.'s Ex. A at 6 (Nov. 7, 1994) ("Receipt").  Plaintiff clarified in its protest that it did not expect Customs to act in response to its objections until final judgment was rendered in the pending test case.  February 1 Letter, Pl.'s Ex. D at 6.

On January 5, 1999, the Federal Circuit Court of Appeals issued its decision in the test case, Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999).  The Alcan Aluminum Corp. Court held that the foreign additive in question was subject to the principle of de minimis non curat lex, and therefore, the entries were considered of Canadian origin.  165 F.3d at 902.  The Alcan Aluminum Corp. decision became final on April 5, 1999.  Pl.'s Opp'n at 4.

Because Aluminerie's entries qualified for preferential trade status under the USCFTA as a result of the favorable decision in Alcan Aluminum Corp., Customs refunded to Aluminerie the deposited MPF amount in full "[o]n or about" February 7, 2000.[10]  Compl. of Aluminerie at 3.

Customs, however, failed to tender interest pursuant to the Agreement when it made the refund to Aluminerie.  Def.'s Mot. at 2; Pl.'s Opp'n at 4.  Aluminerie then sent, on February 10, 2000, a request for accelerated disposition of its protest.  See Pl.'s Opp'n at 4-5; Letter from F. D. "Rick" Van Arnam, Jr., Barnes,

_____

[10]No supporting exhibit was provided, but Defendant does not deny this statement.  See Def.'s Mem. at 2.

Richardson, & Colburn, to Port Dir., Customs, Pl.'s Supp. Ex. A (Feb. 9, 2000); Certified Mail Receipt, Pl.'s Supp. Ex. B (Feb. 10, 2000). Following what Aluminerie considered a denial of the original protest by operation of law, it filed a summons with the Court on September 7, 2000. Summons of Aluminerie at 2. Plaintiff subsequently, on September 30, 2002, filed its complaint seeking relief. Compl. of Aluminerie at 6. The thrust of Plaintiff's complaint is that Customs failed to pay interest on the refunded MPF. Id. at 3-4. As noted above, Defendant Customs moves to dismiss for lack of subject matter jurisdiction.

## II. Standard of Review

Because Plaintiff is seeking to invoke the Court's jurisdiction, it has the burden to establish the basis for jurisdiction. See Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT ____, ____, 273 F. Supp. 2d 1336, 1338 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). At the same time, "the Court assumes 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

### III. Discussion

Defendant moves to dismiss, alleging that because Aluminerie failed to timely protest any Customs decision, subject matter jurisdiction under 28 U.S.C. § 1581(a) is lacking.  See Def.'s Mot at 3-4.  That statute, upon which Plaintiff's claim relies, provides for the review of the denial of a protest made under section 515 of the Tariff Act of 1930, as amended at 19 U.S.C. § 1515.  Compl. of Aluminerie at 1; 28 U.S.C. § 1581(a).  Subsection (a) of section 1515 authorizes Customs "to review and deny or allow a protest as long as it is filed in accordance with 19 U.S.C. § 1514."  19 U.S.C. § 1515(a).  A suit attempting to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a) must therefore be based on a protest which complies with the requirements of section 1514.

Section 1514 states the requirements for protests, two of which are at issue here.  First, the protest must be of a "decision" of the Customs service.  19 U.S.C. § 1514(a).  Second, the protest must be timely filed – that is, no more than ninety days after the protested decision.  19 U.S.C. § 1514(c)(3).[11]

---

[11]Title 19 U.S.C. § 1514(c)(3) provides as follows:

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before--
>     (A) notice of liquidation or reliquidation, or
>     (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as

In its protest, Plaintiff appears to make three objections. See February 1 Letter, Pl.'s Ex. D at 4-6. First, Plaintiff protests the assessment and payment of MPF. Id. at 4. To the extent Plaintiff challenged its own payment of the MPF, the protest is invalid; Plaintiff's tender of payment may be the result of its own decision to do so, but it is not a Customs decision. The demand for tender, however, is a Customs decision; Customs actively demanded payment of the owed amount. See Complaint of Aluminerie at para. 3; Escrow Agreement, Pl.'s Attach. at 1. The demand occurred on September 9, 1994, but Plaintiff did not file its protest until February 6, 1995. See Complaint of Aluminerie at para 5; Protest Form, Pl.'s Ex. D at 3. Because a time period of more than ninety days elapsed between the demand and the protest, Plaintiff's protest fails to present a timely challenge to the assessment and payment of MPF.

Second, Plaintiff protests unanticipated frustration of, and contingencies not foreseen in, the escrow agreement. February 1 Letter, Pl.'s Ex. D at 5-6. While Customs' eventual refusal to pay interest as required by the escrow agreement may have been a protestable decision, the February 6, 1995 protest is simply untimely with regard to Customs' alleged failure to pay interest as

_____

to which protest is made.

19 U.S.C. § 1514(c)(3).

required by law.  Title 19 U.S.C. § 1514(c)(3) states that parties must file protests "within ninety days after <u>but not before</u> . . . the date of the decision as to which protest is made."  <u>Id.</u> (emphasis added).  The decision the protesting party objects to must therefore occur prior to the filing of the protest.  To the extent that Plaintiff objects to the unanticipated event of Customs' decision to refund MPF without interest in February 2000, that event had not yet occurred at the time the protest was filed.[12]
Accordingly, under a plain reading of 19 U.S.C. § 1514(c)(3), Plaintiff's protective protest was untimely and invalid.  <u>See</u> <u>A.N. Deringer, Inc. v. United States</u>, 12 CIT 969, 972, 698 F. Supp. 923, 925 (1988) (holding that a protest was invalid either because it was filed the day before Customs denied a previous claim for relief or barred by the provision allowing only one protest per entry of merchandise).

Third, Plaintiff appears to object to Customs' acceptance of its MPF tender.  <u>See</u> February 1 Letter, Pl.'s Ex. D at 4.  But the

---

[12]Plaintiff claims that Customs made the decision not to pay interest as early as November 8, 1994, the day it sent the November 8 Letter.  <u>See</u> Pl.'s Opp'n at 6.  However, the parties subsequently signed the Agreement, whereby Customs agreed to refund the MPF amount and "interest as may be required by law" if related litigation was successful.  Escrow Agreement, Pl.'s Attach. at 1-2.  Thus, even presuming that Customs made the decision to deprive Aluminerie of interest at such an early stage, that decision was later vitiated by the terms of the Agreement before the filing of the protest.  Moreover, the language of the protest – objecting to unanticipated frustration of the Agreement – clearly refers to decisions which had not yet been made, and not to the November 8 Letter.

mere passive acceptance of funds does not constitute a Customs decision under United States Shoe Corp. v. United States, 114 F.3d 1564 (Fed. Cir. 1997). That case found that Customs' collection of Harbor Maintenance Tax was not protestable, as Customs merely passively accepted the taxes paid pursuant to statute. Id. at 1569. Customs was not involved in calculation of the tax; in fact, the burden of calculation and payment was entirely on the taxed party. Id. Customs' function of collection involved no independent thought process on its part, and its collection of funds therefore gave rise to no protestable decision. Id.

The facts here are somewhat different than those in United States Shoe Corp. Here, Customs appears to have actively demanded payment of the owed MPF. See Escrow Agreement, Pl.'s Attach. at 1. While acceptance of that demanded payment might be considered passive, and therefore not a "decision" under the rule in United States Shoe Corp., Customs did not merely accept Plaintiff's tender. Rather, Customs rejected the contingencies which Plaintiff placed on its tender. See October 6 Letter, Pl.'s Ex. A at 1; November 8 Letter, Pl.'s Ex. B at 1. This rejection required some independent thought on Customs' part; the Court is therefore persuaded that the rejection of contingencies could be regarded as a protestable decision, and thus the acceptance of Plaintiff's tender could have been protestable.

But the fact remains that on February 6, 1995, when Plaintiff

protested the acceptance of tender and the rejection of Plaintiff's contingencies, the parties' relationship to one another had been changed by the conclusion of the Agreement. In the Agreement, Customs appears to have changed its position on payment of interest, and agreed that it would pay such interest "as may be required by law." See Escrow Agreement, Pl.'s Attach. at 2. The complained-of decision to reject contingencies would therefore be moot, being void as a matter of law. Plaintiff, however, argues that the Agreement does not moot the November 8 decision not to pay interest. See Pl.'s Supp. Letter Br. at 3-4 (Nov. 30, 2004). Plaintiff avers that the contingency it placed on its tender was not the requirement to pay "such interest as may be required by law," but rather, simply to pay "interest." Id. at 4-5. Because the tender flatly demanded the payment of interest, with or without legal authorization, and the Escrow Agreement only required payment of interest as required by law, Plaintiff argues that there remains a non-mooted, protestable element to the November 8 rejection of contingencies.

The Court is not persuaded. Plaintiff's escrow agreement was a contract with an arm of the federal government. Federal agencies cannot contract as they choose; their authority to contract is necessarily constrained by the statutes under which the agency operates, by regulations, and by applicable case law. When Plaintiff demanded the payment of interest on its tender, it was,

or should have been, well aware that all it could demand of Customs was that Customs pay back such interest as might be required by law. This is precisely what Customs bound itself to in the Agreement.[13, 14]

Therefore, the mere acceptance of Plaintiff's funds was not protestable, under the rule stated in <u>United States Shoe Corp.</u>, and the rejection of contingencies, which had constituted an active and protestable decision, was void as a matter of law as a result of the Agreement.

Accordingly, the protest upon which this case was brought was untimely filed as to two of the decisions to which Plaintiff objected, and the third objected decision was void as a matter of law and therefore not protestable. Accordingly, Customs' motion to dismiss is hereby granted, and the Court enters judgment for Defendant.

    /s/Donald C. Pogue    
Donald C. Pogue,
Judge

---

[13]The Court is hard pressed to understand why Plaintiff would have entered into the Agreement were the refund of its money along with "such interest as may be required by law" manifestly disagreeable to it. The Agreement moots the November 8 letter either because it represents Customs' acceptance of contingencies, or because it represents Plaintiff's negotiated determination to abandon its claim to forms of interest other than those "required by law."

[14]Because the Court finds that the protestable portion of the November 8 letter was rendered legally void by the escrow agreement, the Court need not reach the question of whether the protest was timely filed as to this issue.

Dated:    December 8, 2004
          New York, New York